The opinion of the Court was delivered by,
Tilghman C. J.
The plaintiff’s action was for goods sold and delivered, and it was supported by evidence concerning which there was no question. The doubt arose, on an account offered by the defendant by way of defalcation. The Judge who tried the cause, was of opinion, that it was not admissible, and the present motion for a new trial, is founded upon the supposed error in this opinion. The hardship of the defendant’s situation has been very earnestly pressed *120 by his counsel. The plaintiff resides in Amsterdam. It will be difficult, therefore, for the defendant to come at him, unless he is permitted to bring forward his demand under the form of a set-off. I have considered the case, with a wish to relieve the defendant, if possible ; not forgetting, however, that we have no right to alter the law, in order to give redress in a particular case. The defendant gave notice of a set-off, in substance as follows : — A certain J:A. Woershing, of Nuremberg, consigned to the plaintiff of Amsterdam, a quantity of goods, with orders to forward them by the first good vessel, to the defendant, or his order, in Philadelphia; but the plaintiff, instead of sending them to the defendant, consigned them to Messrs. Buck &? Krumbhaar of Philadelphia, without the order of' the defendant. This cannot be considered as a contract between the plaintiff and defendant. It is a demand of damages for an injury of a tortious nature.
The defendant's counsel contend, that they might have induced the jury to believe, that the plaintiff had sold these goods, and received the money, which would have been money received for the use of the defendant. But in this they were wrong. Such an argument to the jury would not have been permitted, because it is in direct contradiction to the notice of defalcation given to the plaintiff. Instead of giving notice of a demand for money had and received, the defendant gave notice, that he claimed the first cost of the goods, and 50 per cent, advance, which he supposes he could have got for them, if they had arrived in due time. A set-off is favoured, because it is equitable ; but it must be used so as not to surprise the plaintiff. It must describe the demand intended to be set-off, with reasonable certainty. If the defendant had given notice that he charged the plaintiff with money received for his use, the plaintiff might have come prepared to disprove this charge, by proving that the goods had never been sold. But under the notice which he received, all that he was called on to do, was to shew sufficient cause for not sending the goods to the defendant. The defendant’s counsel, no doubt, gave notice according to the truth of their client’s cause. In so doing, they discharged their duty, and it is no fault of theiFs, if the demand was of a nature not permitted by law to be set up by way of defalcation. Whether or not it was admissible, is now to be considered. The defendant’s counsel contended for its ad *121 mission at common law, but in this, I think they are not supported by the authorities produced by them. These authorities are collected in 8 Vin. Ab. 556. Tit. Discount A. pl. 2, 3, 4, 5, 6, 7, 8, 9, 10. 16. Without going through all these cases, which depend pretty much on the same principle, I will mention three of them, by which we may judge of the rest. 1. A, disseises B, and sows grain, or makes repairs in the buildings; then B, brings an assise and recovers against A, before the grain is reapt. The value of the grain, and cost of the repairs, shall be recouped against the damages to be recovered by B. ■ 2. The lord disseises his tenant, and brings an assise against him, and recovers. The rent due to the lord shall be recouped. 3. The grantee of a rent-charge disseises the grantor, who brings suit against him and recovers the land; the rent due to the grantee, shall be recouped. Now in all these cases,, damages were to be recovered by the plaintiff for a disseisin, and the question was,' as to the amount of damages. In assessing the damages, it was proper to take into consideration a claim of the defendant’s, arising out of the same subject, viz. the land.'' If the disseisee had the benefit of corn sown at the expense of the disseisor, or of repairs made by him on buildings standing On the land, his damage was thereby lessened: or if the disseisee Owed rent, which issued out of the land, it was reasonable to deduct it from damages arising from an injury done to the land. But no case at common law has been shewn, where the defendant has been permitted to deduct from the plaintiff’s damages on account of an injury done to to him by the plaintiff, in a matter unconnected with the cause of the plaintiffs action. The cases cited, therefore, are not applicable to the case before ■ us. Let us consider then, how the matter stands, under our act of assembly made in the year 1705.' It is somewhat singular, that we should have made a statute provision on this subject, before it was done in England. Yet so it is : our act of assembly was twenty-four years before the British statute of 2 Geo. 2. And the words of our law, are more comprehensive than those of the English. The British’ statutes enact, “ that where there are mutual debts between the plaintiff and defendant, one debt may be set-off against another.” Our act of assembly provides, “ that if two or more dealing together, be indebted to each other, on bonds, bills, bargains, *122 promises, accounts, or the like, and one of them commences an action against the other, it shall be lawful for the defend* ant to plead payment of all, or part, of the sum demanded, and give any bond, bill, receipt, account, or bargain, in evidence.” And as the words of our law are more comprehensive, so our construction has included cases, not permitted to be set-off in England. But it will be found,, on a review of the cases which bear on the point, that we have not gone the length contended for by the defendant; Without undertaking at present, to draw the line which limits the right of defalcation, it may he safely affirmed, that defalcation is not permitted, by reason of any demand against the plaintiff for an act done by him, of a tortious, nature. In Kachlin v. Ralston, and Mulhallon, (reported in 1 Yeates, 571, and 2 Dall. 237,) the plaintiff brought debt on a bond given by the defendant for the price of land purchased of the plaintiff. The defendant was not permitted to give evidence of damages sustained in consequence of the plaintiff ’s erecting a dam, by which the same land was overflowed.. The same principle was affirmed, in Sweitzer v. Garber, cited by Yeates J. in Kachlin v. Ralston; and it was also affirmed Dunlop's lessee v. Spear. 3 Binn. 169. But there are cases, in which the defendant is permitted to give evidence of acts of nonfeasance or misfeasance b,y the plaintiff, where these acts are immediately connected with the plaintiff's cause of action; although perhaps such evidence is not so properly a defalcation, as a defeating in whole or in part, the plaintiff’s action. For instance, in an action for work done, the defendant may shew, that the- work was done badly. To this principle is to be referred the case- of Steigleman v. Jeffries, (1 Serg. & Rawle, 477,). cited and relied on by the defendant. The- plaintiff brought suit against the defendant on a note given by him for the price of some mill-stones which he had purchased of the plaintiff. The defendant was permitted to give evidence, that the plaintiff warranted the stones to be good, and that they were bad. Here it was all one contract.- The plaintiff’s, cause of action, was the price of the stones, and the evidence, went to shew, that at the same time at which the price was fixed, the quality was warranted. It would have been unjust to preclude the jury from hearing the whole contract; and to hear the whole, would be of no benefit to the defendant unless he was permitted to shew, that *123 the plaintiff had broken his part of it. There is another case falling under the same principle, decided by this Court at Lancaster, at May Term, 1818.* The plaintiff’s cause of action was (among other things) services rendered in the capacity of a house-keeper for the defendant. The defendant was permitted to give evidence, that the plaintiff had not discharged the duty of a faithful house-keeper, but on the contrary, had sent some of his furniture to the house of her daughter. This evidence was received, because it was in direct opposition to the plaintiff’s cause of action, by shewing that the services for which the plaintiff demanded compensation, were not done in the manner in which they ought to have been done. I know of no other case worthy of notice, and it must be perceived at once, that the defendant’s case, falls within that principle, which precludes the evi- • dence of damages arising from tort, and is not within that other principle which admits the evidence even of tortious matter, when it meets, and opposes the allegations on which the plaintiff rests his action. For, the defalcation offered by the defendant, is founded on a transaction totally unconnected with the plaintiff’s cause of action; and is nothing else than a claim of damages, not for any breach of contract, but for a misfeasance of the plaintiff, in sending the defendant’s goods to a stranger, without his order. This would have been good evidence to support án action of trover by the defendant, and therefore is not the proper subject of a defalcation. I am of opinion, that the Judge was right, in rejecting the evidence, and therefore there ought not to be a new trial.
New trial refused.

 Since reported, 4 Serg. & Rawle, p. 249. Heck v. Shener.