# The Domestic Sewing Machine Co. *versus* Saylor.

1. An unliquidated account, not between partners, may be set off under our Defalcation Act, although it arises out of a different cause of action.

2. Whether a surety can be proceeded against, before proceeding against his principal, depends to some extent upon the form of his obligation, but where he becomes liable in a joint and several contract to pay money, which his principal owes, he may be proceeded against in the first instance, and the amount of his principal's indebtedness ascertained in an action against him as surety.

3. A party having such right to proceed against the surety for an indebtedness of the principal, can avail himself of the same cause of action, by way of set-off.

February 13th 1878. Before AGNEW, C. J., SHARSWOOD, MERCUR, GORDON, PAXSON and TRUNKEY, JJ. WOODWARD, J., absent.

Error to the Court of Common Pleas, No. 1, of *Philadelphia county :* Of July Term 1877, No. 20.

Assumpsit by John L. Saylor against The Domestic Sewing Machine Company. The defendant, among other pleas, pleaded "set-off," and gave notice of a joint and several bond in the sum of $5000, executed to the defendants by plaintiff and others.

On the trial, before Biddle, J., the plaintiff produced evidence to show that the defendants were indebted to him in the sum of $1800, the price of thirteen wagons sold and delivered to them. Under the plea of set-off, the defendants offered in evidence a joint

[Domestic Sewing Machine Co. *v.* Saylor.]

and several paper in writing, signed by the plaintiff and another, whereby they became sureties to the defendants for the faithful conduct of one Hippard as agent. The plaintiff objected to this writing on the ground that it was not under seal and was at variance with the notice of special matter, which described the instrument as a bond, and that it was therefore inadmissible.

The defendants then, by leave, filed special pleas, setting up this instrument as a contract, and accruing indebtedness under it, when it was admitted, and as proof of indebtedness three promissory notes of Hippard to the defendants were given in evidence. The defendants also alleged an indebtedness of Hippard over and above the amount of these notes. The plaintiff denied the indebtedness.

It was conceded that the evidence did not establish a settled account between the defendants and Hippard, resulting in a balance, which they agreed on.

The plaintiff asked the court to charge :—

Such set-off cannot be allowed, because the account between the company and Hippard, its agent, for whose liability, it is alleged, the plaintiff is liable under the writing in evidence, has not been settled and adjusted. Hippard alleges that the company is indebted to him ; this the company denies, and it cannot now be said with certainty how the account stands.

The court charged :—

" The defendants also, in answer to plaintiff's claim, present a counter claim or set-off against him, arising from an instrument of writing, which amounts to an agreement by the plaintiff to become surety for Hippard for indebtedness due or to be incurred by him to the defendants.

" The surety has a right to be satisfied that there is a debt owing before he can be called on to pay. There must be a settlement and adjustment of accounts between Hippard and the defendants, before Saylor can be held responsible, and you must be satisfied that there was a settlement of accounts and balance struck, before you can give defendants a verdict.

" Unless you believe that there was a final adjustment of accounts between Hippard and the company, and a balance struck between them in favor of defendants, you must disregard the question of set-off."

This ruling was excepted to by defendants.

The verdict was for the plaintiff for $1890.83, and, after judgment thereon, the defendants took this writ, and assigned for error the refusal of the court to charge as requested, and the portion of the charge noted.

*E. Coppee Mitchell*, for plaintiffs in error.—Our Defalcation Act of 1705 is much more sweeping in its terms than the English statute. Under our act unliquidated damages arising from any bar-

[Domestic Sewing Machine Co. *v.* Saylor.]

gain may be set off, whenever they are capable of liquidation by any known legal standard: Hunt *v.* Gilmore, 9 P. F. Smith 450; Steigleman *v.* Jeffries, 1 S. & R. 477; Shaw *v.* Badger, 12 Id. 275; Hubler *v.* Tamney, 5 Watts 51; Nickle *v.* Baldwin, 4 W. & S. 290; Thomas *v.* Shoemaker, 6 Id. 179; Phillips *v.* Lawrence, Id. 152; Ellmaker *v.* Fire Ins. Co., Id. 439; Speers *v.* Sterrett, 5 Casey 192; Halfpenny *v.* Bell, 1 Norris 128.

The question raised here is then could the sewing machine company have maintained an action upon their bond against Saylor, without first ascertaining the exact amount due them by Hippard? The court charged the jury that they could not. This, we submit, was plain error. The obligation given by Saylor and others, to the defendants, is expressly joint and several by its terms—on breach of the condition either one of the obligors might be sued. Each one is severally indebted to the obligors in the whole amount. They can have but one satisfaction, it is true, but they can have it all from any one they choose, and leave them to settle equities between themselves: Walter *v.* Ginrich, 2 Watts 204.

The fact that one or more of the obligors were sureties can make no difference: Bank *v.* Barrington, 2 P. & W. 27; McCaraher *v.* Commonwealth, 5 W. & S. 21; Wayne *v.* Bank, 2 P. F. Smith 352; Beyerle *v.* Hain, 11 Id. 226.

*Josiah Funck* and *William H. Livingood*, for defendant in error.—The set-off was not within the letter or spirit of the statute. That provides that " if two or more dealing together be indebted to each other," &c.

The plaintiff was not indebted to the defendant. The corporation alleged it had an unliquidated claim against Hippard; it was this claim which was offered as a set-off.

It is clearly settled that the debts which can be set off must be such as are due in the same right: Ex'rs of Darroch *v.* Adm'rs of Hay, 2 Yeates 208; Waln *v.* Hewes's Ex'rs, 5 S. & R. 468; Potter *v* Burd, 4 Watts 15; Steel's Ex'rs *v.* Steel, 2 Jones 64; Wolfersberger *v.* Bucher, 10 S. & R. 10. As to this, our statute is the same in effect as the British: Stuart *v.* Commonwealth, 8 Watts 74; Carman *v.* Garrison, 1 Harris 158; McCracken *v.* Elder, 10 Casey 239; Milliken & Co. *v.* Gardner, 1 Wright 456; Lorenz's Administrators *v.* King, 2 Id. 93; Jackson *et al. v.* Clymer, 7 Id. 79; Russell *v.* Miller, 4 P. F. Smith 163; Wharton *v.* Douglass, 26 Id. 275.

A contract by parol, which includes an unsealed writing, needs a consideration to support it: Kennedy's Ex'rs *v.* Ware, 1 Barr 450; Whitehill *v.* Wilson, 3 P. & W. 413; Campbell's Estate, 7 Barr 100; Crawford's Appeal, 11 P. F. Smith 52. The word " bond," *ex vi termini*, imports a sealed instrument: 1 Bouvier's Law Dictionary 186. Mutual promises to ground an action must

[Domestic Sewing Machine Co. *v.* Saylor.]

· be both made at the same instant of time : Whitall *v.* Morse, 5 S.
& R. 361. A mere voluntary compliance by one who had not
previously agreed to it, does not render the other liable: Johnston
and Lyon *v.* Fessler, 7 Watts 48 ; Shupe *v.* Galbraith, 8 Casey
12 ; Snyder *v.* Leibengood, 4 Barr 307. If regarded in the na-
ture of an offer to become responsible for the payment of Hippard's
future liabilities to the company, if he himself would not do so,
then Saylor should have had notice of its acceptance : Patterson *v.*
Reed, 7 W. & S. 144 ; Emerson *v.* Graff, 5 Casey 358 ; Kellogg
*v.* Stockton & Fuller, Id. 460 ; Kay *v.* Allen, 9 Barr 320 ; Un-
angst *v.* Hibler, 2 Casey 150.

Mr. Justice PAXSON delivered the opinion of the court, March
11th 1878.

This record presents but a single question. John L. Saylor
brought suit against the Domestic Sewing Machine Company (de-
fendants below) to recover the contract price for thirteen wagons
which he alleges he constructed for them. The defendants claimed
a set-off, and gave in evidence a joint and several contract in the
form of a bond, signed by Saylor with other parties, the condition
of which was "that if the above bounden, Emanuel Hippard, his
heirs, executors and administrators, shall well and truly pay or
cause to be paid any and every indebtedness or liability now exist-
ing, or which may hereafter in any manner exist, or be incurred on
the part of the said E. Hippard to the said Domestic Sewing
Machine Company, whether such indebtedness or liability shall
exist in the shape of book accounts, notes, renewals, or extensions
of notes or accounts, acceptances, endorsements or otherwise. * *
Then this obligation to be void ; but otherwise to remain in full force
and virtue." This instrument, although in form a bond, and desig-
nated as such in defendants' notice of set-off, was not sealed, and
was objected to for that reason. The defendants then changed their
pleas to meet the exigencies of their defence, and introduced evi-
dence tending to show consideration. It was then properly admit-
ted in evidence. The plaintiff denied that Hippard was indebted to
the company, and there was conflicting evidence upon this point.
The learned judge practically withdrew the question of fact from
the jury by instructing them that "the surety has a right to be
satisfied that there is a debt owing before he can be called upon to
pay. There must be a settlement and adjustment of accounts
between Hippard and the defendants before Saylor can be held
responsible, and you must be satisfied that there was a settlement
of accounts and balance struck before you can give defendants a
verdict." We think this instruction was erroneous. It would
undoubtedly have been more convenient for the purposes of the
trial had there been a settlement of accounts between Hippard and
the company and a balance struck. This, however, is but the

[Domestic Sewing Machine Co. v. Saylor.]

argument *ab inconvenienti*, as such prior settlement is not required by any rule of law. It was not a question between partners where a balance can only be ascertained by a settlement or an action of account render The contract being several as well as joint the company could have sued Saylor upon it either with or without joining the other parties. That he was a surety can make no difference in this respect. Whether a surety can be proceeded against in the first instance depends to some extent upon the form of the obligation which he signs. If then the company could have sued Saylor and recovered for the indebtedness of Hippard, there seems no good reason why they may not avail themselves of the same cause of action by way of set-off. The practical difficulties upon the trial could be no greater than in the case of unliquidated damages for breach of contract, and it has been repeatedly held that such damages may be set off: Shaw *v.* Badger, 12 S. & R. 275 ; Steigleman *v.* Jeffries, 1 Id. 477; Hubler *v.* Tamney, 5 Watts 51 ; Nickle *v.* Baldwin, 4 W. & S. 290; Thomas *v.* Shoemaker, 6 Id. 179 ; Phillips *v.* Lawrence, Id. 152; Ellmaker *v.* Fire Ins. Co., Id. 439; Speers *v.* Sterrett, 5 Casey 192; Hunt *v.* Gilmore, 9 P. F. Smith 450; Halfpenny *v.* Bell, 1 Norris 128. Our Defalcation Act is very broad in its terms. It allows the defendant to give any "bond, bill, receipt, account or *bargain* in evidence." But I do not propose to discuss this act at length. It has been in force since 1705, and ought by this time to be generally understood. Here, in answer to the suit, the defendants allege that the plaintiff is indebted to them upon this bond. That such indebtedness may be set off is too plain for argument.

Judgment reversed and a *venire facias de novo* awarded.