Potter *versus* Warner.

1. Where a physician or surgeon takes the charge of a patient, he assumes an implied obligation to treat the case with reasonable diligence, carefulness and skill.

2. The measure of professional skill which a physician is bound to exercise does not depend on whether or not he refused the proffered assistance of other medical men.

3. It is the duty of the patient to submit to the treatment prescribed, and to follow the directions given, provided they be such as a physician of ordinary skill would adopt or sanction.

4. If the contributory negligence of the patient united in producing the injuries complained of, the physician is not liable in damages therefor, and this rule applies to unnecessary pain and protracted illness as well as to a permanent deformity of a limb.

5. If the parents of the patient, who also were in charge of and nursed him did not obey the directions of the physician in regard to his treatment and care, and thereby contributed to the injuries, the patient cannot recover

[Potter v. Warner.]

October 17th 1879.  Before SHARSWOOD, C. J., MERCUR, GORDON, PAXSON, TRUNKEY and STERRETT, JJ.  GREEN, J., absent.

Error to the Court of Common Pleas, No. 2, of *Allegheny county :* Of October and November Term 1879, No. 115.

This was an action on the case, brought by John Warner, a minor, by his next friend, Albert Warner, against Dr. J. D. Potter, for alleged negligence and want of skill on the part of the defendant, a physician and surgeon, in the treatment of an injury received by the plaintiff.

The plaintiff, on November 21st 1872, when about the age of eight years, while playing about the track of a coal company in the city of Pittsburgh, was knocked down and run over by a coal car, the wheel of which passed over his left leg, crossing to the outside, about the ankle, and passed up the outside of the leg until it reached the knee, where it passed in and cut the tendons, muscles and ligaments on the outside of the knee.

The declaration first alleged a fracture of the bone near the knee, which was treated by the defendant as a flesh wound; afterwards an additional count was filed, by leave of court, alleging that there was a dislocation treated as a flesh wound; and afterwards, at the close of the trial, an additional count was filed, alleging carelessness and want of skill, by which a permanent injury was produced.

The evidence of the man pushing the car at the time of the accident was that the upper and lower leg moved past each other sideways at the knee, when the boy attempted to stand up.  The testimony of the defendant was that there was no dislocation ; that he examined for dislocation, and was able to decide positively, because the wound was an open one.

There was no other testimony relating to the question of dislocation, except that of some of the experts produced by the plaintiff, who, on an examination six years after the accident, testified that there was a partial dislocation of the knee-joint at the time of the accident.

The experts produced by the defendant were as positive that there was no dislocation then, and was none at the trial, but that the present deformity was the gradual result of a drawing by the anterior and internal muscles of the leg, without the counter-action of the external and posterior muscles and tendons which were destroyed by the accident, and by constitutional trouble weakening the joint and delaying the healing process, and had been increased by the weight of the boy's body on the leg for several years.

The plaintiff's witnesses agreed that the leg, when the defendant was discharged from the case, was about straight and in a natural position, but that the deformity has been increasing daily since then.

There was no testimony to show that there had been an increase

[Potter *v.* Warner.]

of pain and suffering during the attendance of the defendant, or that his treatment was improper, if this wound was what he claimed it to be, a flesh wound, and not a dislocation.

There was testimony tending to show carelessness and a failure to comply with the directions of the defendant on the part of the parents of the boy, and also showing a careless use of the limb by the boy after he commenced to walk.

At the trial, before White, J., the plaintiff submitted the following points, to which are appended the answers of the court :—

1. That if they believe from the evidence that the plaintiff, John Warner, after the reception of his injury, and having received from the defendant, Dr. Potter, medical attendance for said injury for a period of fourteen or sixteen weeks, was himself or through his parents, directed to leave his bed and go out on crutches without any splinters or apparatus to maintain the leg in a straight position, then the defendant would be liable for unskilful treatment, if the testimony of the medical experts is to be believed.

Ans. "This point is affirmed, if the jury find from all the evidence that the permanent deformity resulted directly from going out on crutches without supports to the limb."

2. That if they believe there was, at the time Dr. Potter was called to attend plaintiff's injury, a dislocation, either total or partial, of the knee-joint, then the plaintiff would be liable for unskilful treatment.

Ans. "Affirmed."

3. That if the jury believe the defendant refused the proffer of plaintiff's parents of the assistance of other medical men in the treatment of plaintiff's injury, then he is liable for any damage that may have resulted to the plaintiff, by reason of his want of skill, if any such want there was.

Ans. "Affirmed."

Defendant's fifth point was as follows :

That if the jury believe that the parents of the plaintiff were in charge of and nursed the plaintiff during his sickness, and did not obey the directions of the defendant in relation to the care and treatment of the plaintiff during his illness, but on the contrary, disregarded his said directions, and that this contributed to the present condition of plaintiff's leg, then that their verdict must be for defendant.

Ans. "Affirmed as to the permanent injury to the leg."

In the general charge the court, inter alia, said :

"A professional man is responsible for any lack of proper knowledge, care and attention on his part, in the performance of his duty, the same as a mechanic is responsible for negligence in the performance of his duty. If you take your horse to a regular blacksmith to be shod, and the horse is injured by the carelessness and lack of skill and knowledge on the part of the blacksmith, you

[Potter *v.* Warner.]

have an action against him for the injury done to the horse. A professional man, doctor or lawyer is responsible in the same way. * * *

" You will probably be satisfied from the evidence that some one is at fault. I believe all of the physicians and surgeons who were examined, testified that the limb might have been saved as a straight one. Who is to blame that it was not ? * * *

" As I understand the *narr.*, the claim in this case is for damages the boy sustained from pain and suffering, in consequence of the unskilful treatment on the part of the doctor, and also for the permanent injury in the deformity of the limb. A doctor is responsible for unnecessary pain that the patient may suffer, and for the protracted illness resulting from the want of skill and care on the part of the physician. * * *

" You will probably, as I say, be satisfied from the evidence that this boy's limb might have been saved a straight limb. * * *

" If the boy suffered unnecessary pain or a protracted illness, or a permanent injury from the want of such knowledge, skill, care or attention on the part of the defendant, then he is liable in damages to the plaintiff. * * *

" The doctrine of contributory negligence, if it is properly applied to this case, does not control it. The defendant is charged with unskilfulness and negligence in his professional treatment of the plaintiff. If he was guilty of unskilfulness or negligence which directly caused any injury to the plaintiff, he is responsible for such injury to the plaintiff. But of course he is not responsible for any injury resulting from any other causes. For instance, the permanent deformity of the limb may have resulted from the fault of the boy or his parents, for which the defendant could not be responsible. Yet, if the boy suffered unnecessary pain or a protracted illness from the fault of the defendant, he would be responsible for that. * * *

" If you find that the negligence and unskilfulness of the defendant caused the boy unnecessary pain and protracted illness, that is a matter of damages for you to estimate. He is entitled to compensation for the pain that he may have suffered, even if the doctor is not responsible for the permanent deformity of the limb. If his want of skill and neglect caused pain and unnecessarily protracted illness, and also caused deformity of the limb, then you will give damages for the whole."

Verdict for plaintiff for $500, and after judgment defendant took this writ and alleged that the court erred in the answers to the foregoing points and the portions of the charge noted above.

*Knox & Reed* and *W. D. Moore*, for plaintiff in error.

*J. McF. Carpenter*, *C. W. McCord* and *J. K. P. Duff*, for defendant in error.

[Potter *v.* Warner.]

Mr. Justice MERCUR delivered the opinion of the court, November 10th 1879.

This was an action on the case against the plaintiff in error, a physician and surgeon, for malpractice in treating the defendant in error. When about eight years of age the latter was run over by a coal car. The wheel passed over his leg near the ankle, thence up the outside of the leg cutting the tendons, muscles and ligaments at the knee. The evidence was conflicting as to whether the joint was dislocated or the bone fractured.

When a physician or surgeon takes the charge of a patient, he assumes an implied obligation to treat the case with reasonable diligence, carefulness and skill. It is, however, the duty of the patient to submit to the treatment prescribed, and to follow the directions given, provided they be such as a physician of ordinary skill would adopt or sanction. Having assumed the charge of the boy Warner, the measure of professional skill which the plaintiff in error was bound to exercise, did not depend on whether or not he refused the proffered assistance of other medical men. His refusal was no more than an implied declaration of his ability to treat the case properly. By assuming and continuing the charge of the patient, he was under an obligation to exercise a degree of skill which was neither increased nor diminished by such refusal. Hence the affirmance of the fourth point submitted by the defendant in error was calculated to mislead the jury, by conveying the idea that the refusal of such assistance imposed on the plaintiff the exercise of a higher degree of skill than would otherwise be required of him.

The claim was to recover damages for unnecessary pain suffered, protracted illness, and permanent injury to the leg.

In addition to evidence of the exercise of proper attention and skill on the part of the plaintiff in error, he also gave evidence tending to prove that all the causes of complaint were produced by a neglect and refusal of the defendant in error to follow the reasonable directions given by the plaintiff in error. It was therefore claimed that if the defendant in error was guilty of contributory negligence in producing the injuries complained of he could not recover. The court, however, said to the jury "the doctrine of contributory negligence, if it is properly applied to this case, does not control it. The defendant is charged with unskilfulness and negligence in his professional treatment of the plaintiff. If he was guilty of unskilfulness or negligence which directly caused any injury to the plaintiff, he is responsible for such injury to the plaintiff; but of course he is not responsible for any injury resulting from any other cause. For instance, the permanent deformity of the limb may have resulted from the fault of the boy or his parents, for which the defendant could not be responsible; yet, if the boy

[Potter *v.* Warner.]

suffered unnecessary pain or a protracted illness from the fault of the defendant, he would be responsible for that.''

The learned judge failed to give due legal effect to contributory negligence of the defendant in error. It is true the plaintiff in error was charged with negligence and unskilfulness. Although guilty thereof, yet it did not necessarily follow that he was liable in damages therefor. If the contributory negligence of the defendant in error united in producing the injuries complained of he was not so liable. This rule applies to the unnecessary pain and protracted illness as well as to the permanent deformity of the limb. The evidence is amply sufficient to submit to the jury the question of contributory negligence on the part of the defendant in error. If they find the parents of the boy were in charge of and nursed him during his sickness, and that they did not obey the directions of the plaintiff in error in regard to the treatment and care of their son during such time, but disregarded the same and thereby contributed to the several injuries of which he complains, he cannot recover therefor. If the injuries were the result of mutual and concurring negligence of the parties, no action to recover damages therefor will lie. A person cannot recover from another for consequences attributable in part to his own wrong. Nor is it necessary that the negligence of each party be equal, to defeat a recovery: Catawissa Railroad Co. *v.* Armstrong, 13 Wright 186. It was well said in Railroad *v.* Norton, 12 Harris 465, "the law has no scales to determine in such cases whose wrongdoing weighed most in the compound that occasioned the mischief." It follows that in so far as the several assignments of error are in conflict with this opinion they are sustained. Beyond that we discover no error.

Judgment reversed, and a *venire facias de novo* awarded.